**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEBRA MILLS, JESSE MONTANO and EILEEN R. AVILES on behalf of themselves and all others similarly situated,**<br><br>                     **Plaintiffs,**<br>**v.**<br><br>**CONOPCO, INC.**<br><br>                     **Defendant** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiffs Debra Mills, Jesse Montano and Eileen Aviles ("Plaintiffs"), on behalf of themselves and all others similarly situated, brings this class action against Conopco, Inc. ("Conopco" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

### INTRODUCTION

1.    This is a proposed class action on behalf of a California and nationwide class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Dove Sensitive Hypoallergenic Body Wash ("Product" or "Body Wash").

2.    This action seeks to redress Defendant's false and misleading marketing claims that its Body Wash is "hypoallergenic" when, in fact, it is not.

3.    Allergen-related contact dermatitis is an inflammation or irritation (*e.g.*, rash) that results from an allergen coming in contact with the skin. It affects 20% of the population. As skin sensitivities have become more common, consumers increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about personal care products.

4.    Defendant sells Dove Sensitive Hypoallergenic Body Wash which prominently claims to be "hypoallergenic." The materiality of the representation is evident by its prominent placement on the principal display panel and its repetition elsewhere on the Product packaging.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF







5. The Product does not list any known allergen by name. It does, however, include "fragrance" among its ingredients.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

**INGREDIENTS:** WATER (AQUA), SODIUM LAUROYL ISETHIONATE, SODIUM METHYL LAUROYL TAURATE, COCAMIDOPROPYL BETAINE, LAURIC ACID, SODIUM HYDROXYPROPYL STARCH PHOSPHATE, HYDROGENATED SOYBEAN OIL, GLYCINE SOJA (SOYBEAN) OIL, SODIUM CHLORIDE, GLYCERIN, STEARIC ACID, PALMITIC ACID, HYDROGENATED VEGETABLE GLYCERIDES, GLYCERYL STEARATE, HYDROXYSTEARIC ACID, SODIUM BENZOATE, GUAR HYDROXYPROPYLTRIMONIUM CHLORIDE, FRAGRANCE (PARFUM), CITRIC ACID, CAPRYLOYL GLYCINE, UNDECYLENOYL GLYCINE, SODIUM GLUCONATE.

6.    The American Academy of Dermatology ("AAD") has recognized fragrances as a common skin irritant, source of allergens and a leading cause of allergic contact dermatitis. The federal Food and Drug Administration ("FDA") has similarly acknowledged that many cosmetics and personal care products may contain hidden allergens within their dyes, preservatives and, as is the case here, fragrances. Indeed, the FDA identified 26 fragrance allergens that "that cause the most allergic reactions from the use of cosmetic products.

7.    Unfortunately, since manufacturers need only list 'fragrances' generically on a product label, without further revealing the sub constituents of such fragrances, consumers have no way of knowing whether a product containing fragrance also contains hidden allergens. Rather, they must rely exclusively on a manufacturer's label representations (*i.e.*, hypoallergenic).

8.    Plaintiffs commissioned independent analytical testing of Defendant's Product and discovered that it contains d-Limonene, one of the 26 recognized fragrance allergens. Defendant's inclusion of a known fragrance allergen directly contradicts Defendant's voluntary claim that its Product is "hypoallergenic" thereby rendering it false and misleading.

9.    The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to reduce the likelihood of allergic reactions, including, but not limited to, by avoiding the intentional inclusion of known contact allergens.

10.    Reasonable consumers must and do rely on manufacturers to honestly represent the qualities of their Products and ingredients.

11.    Consumers, like Plaintiffs, have been deceived by Defendant's false and misleading claim that the Product is hypoallergenic. As a result of their reliance on Defendant's

misrepresentations, Plaintiffs and Class Members have suffered an ascertainable loss of money, including, but not limited to, out of pocket costs incurred in purchasing the Products or having paid a price premium for the Products as compared to other body wash products that do not make the same false and deceptive claims.

12. Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and the United States.

13. Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § 17500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## **JURISDICTION AND VENUE**

14. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Mills is a resident of Alameda, California, Plaintiff Montano is a resident of Kensington, California, Plaintiff Aviles is resident of Suisun, California and Defendant Conopco Inc. is Delaware corporation with its principal place of business in Hoboken, New Jersey. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

15. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

**PARTIES**

16.    Plaintiff Debra Mills is a resident of Alameda, California.

17.    Ms. Mills purchased Defendant's Body Wash from a Walmart store in San Leandro, California and a Target store in Alameda in November and December 2025.

18.    Ms. Mills made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product was hypoallergenic.

19.    Ms. Mills reasonably believed that the "hypoallergenic" representation meant that the Product was formulated to reduce the likelihood of allergic reactions and did not include known fragrance allergens.

20.    Ms. Mills believed that Defendant lawfully marketed and sold the Products.

21.    Ms. Mills relied on Defendant's labeling and was misled thereby.

22.    Ms. Mills would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth – *i.e.,* that the Product was not hypoallergenic, but instead contained known allergens.

23.    Ms. Mills was injured in fact and lost money as a result of Defendant's improper conduct.

24.    Plaintiff Jesse Montano is a resident of Kensington, California.

25.    Mr. Montano purchased Defendant's Product regularly from Target store locations near his residence throughout 2023 and 2024.

26.    Mr. Montano made each of his purchases after reading and relying on Defendant's Product label, specifically the representation that the Product was hypoallergenic.

27.    Mr. Montano reasonably believed that the "hypoallergenic" representation meant that the Product was formulated to reduce the likelihood of allergic reactions and did not include known fragrance allergens.

28.    Mr. Montano believed that Defendant lawfully marketed and sold the Products.

29.    Mr. Montano relied on Defendant's labeling and was misled thereby.

30. Mr. Montano would not have purchased the Product, or would have purchased the Product on different terms, had he known the truth – *i.e.,* that the Product was not hypoallergenic, but instead contained known allergens.

31. Mr. Montano was injured in fact and lost money as a result of Defendant's improper conduct.

32. Plaintiff Eileen Aviles is a resident of Suisun, California.

33. Ms. Aviles purchased Defendant's Body Wash from Walmart and Grocery Outlets regularly between 2023-2025.

34. Ms. Aviles made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product was hypoallergenic.

35. Ms. Aviles reasonably believed that the "hypoallergenic" representation meant that the Product was formulated to reduce the likelihood of allergic reactions and did not include known fragrance allergens.

36. Ms. Aviles believed that Defendant lawfully marketed and sold the Products.

37. Ms. Aviles relied on Defendant's labeling and was misled thereby.

38. Ms. Aviles would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth – *i.e.,* that the Product was not hypoallergenic, but instead contained known allergens.

39. Ms. Aviles was injured in fact and lost money as a result of Defendant's improper conduct.

40. Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the Product advertising was deceptive and/or misleading under California law and the Products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

41. Defendant Conopco, Inc. is a Delaware corporation headquartered in Hoboken, New Jersey. It is a wholly owned subsidiary of Unilever, one of the world's largest consumer goods companies with more than 18 brands in its portfolio, among which are Dove Brand products

including the Product at issue in this litigation. Its products are available for purchase online and in various retail locations throughout the country.

## GENERAL ALLEGATIONS

### A.    HYPOALLERGENIC AND THE REASONABLE CONSUMER

42.    Fragrance substances are naturally or synthetically derived organic compounds designed to impart scent or to mask unpleasant odors. Fragrances are ubiquitously found in personal care products. A fragrance formula may contain up to several hundred or more different ingredients that are not disclosed on product labels.

43.    Contact allergies to fragrance ingredients occur when a susceptible individual has been dermally exposed to a fragrance allergen present in a consumer product. Sensitization can occur at any time. Once sensitization occurs, re-exposure can trigger allergic contact dermatitis.

44.    Although the Food Drug and Cosmetic Act ("FDCA") does not define the term "hypoallergenic," the FDA has acknowledged that the term is used by manufacturers to describe products that are intended to produce fewer allergic reactions than regular products, and that such claims are material to consumers with sensitive skin.

45.    Consistent with common understanding, reasonable consumers interpret "hypoallergenic" to mean that a product is formulated to reduce the likelihood of allergic reactions, including by avoiding ingredients widely recognized as common causes of allergic contact dermatitis when those ingredients serve no functional necessity beyond fragrance. This common understanding is consistent with the dictionary definition of the term hypoallergenic.

- "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[1]

- "having little likelihood of causing an allergic response"[2]

---

[1] https://www.dictionary.com/browse/hypoallergenic
[2] https://www.merriam-webster.com/dictionary/hypoallergenic

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

- "designed to be less likely to cause allergic reactions" [3]

- designed to be less likely to cause allergic reactions (physical problems caused by particular substances) in people who use a product[4]

46.     The FDA recognizes that "[t]he term 'hypoallergenic' may have considerable market value in promoting cosmetic products to consumers on a retail basis…" and that "[c]onsumers with hypersensitive skin, and even those with 'normal' skin, may be led to believe that [] [] products will be gentler to their skin than non- cosmetics." It explains, "[f]or many years, companies have been producing products which they claim are 'hypoallergenic' or 'safe for sensitive skin' or 'allergy tested.' These statements imply that the products making the claims are less likely to cause allergic reactions than competing products. . . ."[5]

47.     Thus, Plaintiffs believed, as would any reasonable consumer, that a  product labeled hypoallergenic is less likely to cause an allergic response because it is formulated to minimize the presence of common allergens. In other words, Plaintiffs and Class members reasonably believed that "hypoallergenic" as used by Defendant meant that, at a minimum, the Products would not contain known fragrance allergens.

B.     **THE MARKET FOR  HYPOALLERGENIC PRODUCTS**

48.     A significant portion of the U.S. population has allergies that are triggered by skin care products. Allergic contact dermatitis is one of the most prevalent skin diseases in the U.S., affecting 20% of the population.[6] Personal care products frequently contain ingredients that may cause allergic contact dermatitis.

---

[3] https://dictionary.cambridge.org/us/dictionary/english/hypoallergenic
[4] https://dictionary.cambridge.org/us/dictionary/english/hypoallergenic#google_vignette

[5] U.S. Food & Drug Administration, Hypoallergenic Cosmetics (2/25/2022). Available at https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics#:~:text=Hypoallergenic

[6] Alinaghi, F., et al., *Prevalence of contact allergy in the general population: A systematic review and meta-analysis*, October 29, 2018. https://doi.org/10.1111/cod.13119.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

49.    The risk of contact dermatitis from fragrance chemicals increases for those with compromised skin barriers. For individuals with sensitive skin or conditions like eczema, rosacea, or psoriasis, the use of fragranced products can be particularly problematic, exacerbating these conditions over time.

50.    Even when there is no visible redness or rashes after using a product with fragrance chemicals, there may be inflammation at the cellular level and long-term consequences if use is prolonged. With repeated exposure over time, even individuals who initially tolerate fragranced products may develop allergies or sensitivities, sometimes leading to chronic skin issues.

51.    Given the increased prevalence of allergic contact dermatitis and other skin conditions, consumers increasingly seek clean products looking for and relying on terms such as "hypoallergenic" in making purchasing decisions. Those who do not already suffer from skin allergies commonly seek products to avoid developing skin allergies. Those who suffer from skin allergies, or have family members who suffer from skin allergies, seek products to avoid unknown and/or hidden allergens that could exacerbate or prolong their conditions.

52.    Personal care companies, such as Conopco have seized on this burgeoning market opportunity taking every chance to label and promote their products with terms such as "natural," "clean," and "hypoallergenic." As a result, "[t]he global sensitive skin care products market size, [] estimated at USD 44.60 billion in 2023, [] is projected to reach USD 80.97 billion by 2030…. The market growth is attributed to significant rise in consumer awareness regarding skin sensitivities and the importance of using gentle and hypoallergenic products…. Increasing awareness about skin sensitivities and the demand for gentle and hypoallergenic products have contributed to the expansion of this market segment. Moreover, many brands [that] provide clear and concise information about the ingredients used in their body sensitive care products are gaining trust and loyalty from consumers."[7]

---

[7] Grandview Research, *Sensitive Skin Care Products Market (2024-2030).* Available at https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

**C.        PLAINTIFFS' ANALYTICAL TESTING OF DEFENDANT'S PRODUCT**

53.        The issue of hidden allergens in cosmetic products is a concern well documented by the FDA. "Cosmetic products (such as soaps, lotions, face and eye make-up, fragrances, etc.) can provoke allergic reactions in some people. Many people suffer from allergies and anyone at any age can develop allergies."[8] In response to this concern, the FDA acknowledged the findings of the European Commission which conducted extensive research on fragrance allergens. The research culminated in a list of the 26 most common fragrance allergens. *Id.* The list specifically identified d-Limonene among them.

54.        In April 2026, Plaintiffs commissioned independent analytical testing of Defendant's Product by an independent, accredited analytical laboratory. The Product sample tested was purchased on-line from Amazon. [9]

55.        The testing employed headspace gas chromatography coupled with mass spectrometry ("GC/MS") to identify volatile and semi-volatile fragrance constituents.

56.        The testing detected the presence of d-Limonene, a fragrance constituent widely recognized in dermatological and toxicological literature as common causes of allergic contact dermatitis. It is among the 26 fragrance allergens acknowledged by the FDA.[10]

57.        This fragrance allergen was not disclosed on the Product's label, but rather is present solely as a component of the Product's fragrance formulation and discoverable only through testing.

58.        Defendant's inclusion of this known fragrance allergen renders its "hypoallergenic" representation false and misleading.

---

[8] U.S. Food & Drug Administration, Allergens in Cosmetics, February 25, 2022. Available at https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics.

[9] The following lot number was tested: 10075JU41. On information and belief, Conopco has used the identical formulation throughout the applicable class periods.

[10] See *supra* fn.8.

59.     Because fragrance allergens such as d-Limonene are intentionally incorporated into the Product's fragrance formulation as a standard component, its presence is not attributable to trace contamination or lot-specific variation. Rather, this allergen is present in the Product's standard composition across all production runs. The inclusion of recognized fragrance allergens serves only an aesthetic purpose—to impart scent or mask unpleasant scents from other ingredients —and serves no functional or therapeutic necessity, making its presence particularly incongruent with a "hypoallergenic" claim.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF



COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## REASONABLE CONSUMER

60.     Defendant knew that one of the most important representations made on the Product's label is that it is "hypoallergenic."

61.     Defendant placed the "hypoallergenic" representation prominently on the Product's principal display panel and repeated the representation elsewhere on the packaging, demonstrating Defendant's intent that consumers see, notice, and rely upon the statement at the point of sale.

62.     Reasonable consumers ascribe a common, shared meaning to words and phrases appearing on product labels, particularly where those words relate to health, safety, or skin sensitivity.

63.     Reasonable consumers rely on product labels for their truth and accuracy and are entitled to do so without conducting independent scientific testing or ingredient analysis.

64.     Reasonable consumers are not required, nor able to, conduct research into undisclosed subcomponents of listed ingredients, such as fragrance constituents, in order to verify the truthfulness of express label claims.

65.     Nor are reasonable consumers required to discount or disbelieve prominent front-of-package representations based on the mere possibility that undisclosed ingredients may contradict those representations.

66.     Instead, it is the responsibility of product manufacturers to ensure that express labeling claims are truthful and not misleading in light of the Product's actual formulation.

67.     Plaintiffs and Class Members reasonably believed that Defendant's prominent front and back label statement that the Product is "hypoallergenic" was true.

68.     Plaintiffs and Class Members reasonably understood "hypoallergenic" to mean that the Product was formulated to reduce the likelihood of allergic reactions as compared to ordinary products, including by avoiding the intentional inclusion of ingredients widely recognized as common causes of allergic contact dermatitis.

13
COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

69.     This understanding is particularly reasonable where, as here, the allegedly hypoallergenic Product includes fragrance solely for sensory purposes and not for any functional or therapeutic necessity.

70.     Defendant's "hypoallergenic" representation conveyed to reasonable consumers that the Product was suitable for sensitive skin and less likely to provoke allergic reactions than competing products that do not make such claims.

71.     By deceiving consumers about the nature, quality, and formulation of its Product, Defendant was able to capture market share from competing products and command a price premium, increasing its own sales and profits.

72.     Consumers lack the ability to test or independently ascertain the presence of fragrance allergens at the point of sale. Consumers therefore must and do rely on manufacturers to accurately disclose or avoid making misleading representations regarding allergenic risk.

73.     At the time Plaintiffs and Class Members purchased the Product, they did not know, and had no reason to know, that the hypoallergenic representations were misleading, deceptive, and unlawful.

74.     Plaintiffs and Class Members would not have purchased the Product, or would have purchased it on different terms, had they known the truth.

### NO ADEQUATE REMEDY AT LAW

75.     Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

76.     Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

77.     Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws, which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiffs and Class

members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

78. Defendant continues to misrepresent the Product claiming it is "hypoallergenic" thereby necessitating injunctive relief in order to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

79. Finally, this is an initial pleading. The adequacy and availability of all remedies, including legal and equitable, will not be resolved until the case is further advanced upon the closure of discovery, resolution of class certification and any potential summary judgment.

## ECONOMIC INJURY

80. Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

81. Manufacturers charge a price premium for products that are labeled as hypoallergenic. Defendant intentionally included the "hypoallergenic" representation on the Product's label and in marketing materials to increase sales and/or charge a premium for the Product.

82. Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

83. Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Product.

84. Defendant knew or should have known that the representations could plausibly deceive reasonable consumers into believing that the Product is hypoallergenic and at a minimum does not contain common allergens.

85. Plaintiffs believed that the Products were lawfully marketed and sold.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

86.    In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs paid for Products that they would not have purchased or, at a minimum, a price premium.

87.    As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed the Products did not contain.

88.    Plaintiffs received Products that were unlawfully marketed and sold.

89.    Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

90.    Defendant knows that the claim "hypoallergenic" is material to a consumer's purchasing decision.

91.    Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

92.    By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

93.    Plaintiffs, however, would be willing to purchase products labeled as hypoallergenic again in the future, including Defendant's Product, should they be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

94.    However, Plaintiffs will not be able to purchase Defendant's Product in the future, even though Plaintiffs would like to, since simply viewing the ingredient list on Defendant's Product that displays the wording "hypoallergenic" on the label will not be enough to prevent Plaintiffs from being deceived by Defendant's Product since the sub-components of a fragrance need not be individually listed on the label thereby depriving the Plaintiffs of any ability to determine existence of allergens in advance of purchase. Moreover, even if the information were made available,  Plaintiffs, as reasonable consumers, does not have the scientific background or knowledge to make such a determination.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

      a.  **California:** All persons in California who purchased the Product in California during the applicable Class Period; [11]

      b.  **Nationwide**: All persons who purchased the Product in the United States during the applicable Class Period;

      c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[12]

96.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

97.     Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

98.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

99.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

100.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

---

[11] Collectively referred to as "Class or Classes."

[12] The statute of limitations for Plaintiffs' claims under California Civil Code § 1750, *et seq.*, and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years prior to the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years prior to the date of filing to the present.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

a. Whether Defendant marketed, packaged, or sold the Product to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h. Whether Defendant's actions constitute breach of express warranty;

i. Whether Defendant should be enjoined from continuing the above-described practices;

j. Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

101. Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendant's Product. Plaintiffs are consumers who purchased Defendant's Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

102. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and her counsel will adequately protect the interests of the Class.

103. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be

relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

104.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

105.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty
Cal. Com. Code §2313**

106.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

107.    Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased were "hypoallergenic."

108.    The "hypoallergenic" representation is a specific, affirmative statement of fact regarding the Products' formulation and allergenic profile which appears uniformly on every unit of the Product sold during the Class Period and was intended to, and did, become part of the basis of the bargain between Defendant and consumers.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

109. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

110. Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

111. As alleged herein, the Products contain fragrance constituents, including d-Limonene, that are widely recognized as common causes of allergic contact dermatitis and are inconsistent with the express "hypoallergenic" representation.

112. Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

113. Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

114. Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200,** *et seq.*
**(On behalf of the California Class)**

115.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

116.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

117.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

118.    Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

119.    In accordance with California Business & Professions Code section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

120.    Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and requests that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the

Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### THIRD CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

121.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

122.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

123.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

124.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they are "hypoallergenic" is fraudulent.

125.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiffs and the Class from the purchases of its Products.

126.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

127.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition

Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION

**Unlawful Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

128. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

129. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

130. A business act or practice is "unlawful" if it violates any established state or federal law.

131. Defendant's labeling and marketing of the Products as "hypoallergenic" constitutes an unlawful business practice within the meaning of the UCL because it violates California's Sherman Food, Drug, and Cosmetic Law, Health & Safety Code section 111730 et seq.

132. Under the Sherman Act, a cosmetic is misbranded if its labeling is false or misleading in any particular. Health & Safety Code § 111330. California's Sherman Act expressly adopts the federal cosmetic misbranding standard set forth in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 362(a).

133. Defendant labeled and marketed the Products as "hypoallergenic" despite the intentional inclusion of fragrance ingredient d-Limonene that is widely recognized as common allergen. This representation created a false and misleading impression regarding the Products' formulation and allergenic profile.

134. Because the Products' labeling was false or misleading in a material respect, the Products were misbranded under 21 U.S.C. § 362(a) and Health & Safety Code § 111730.

135. Plaintiffs do not seek to enforce the FDCA, nor do Plaintiffs seek to impose requirements different from or in addition to those imposed by the FDCA. Plaintiffs seek to enforce California law that independently incorporates the federal misbranding standard and is actionable under the UCL.

136. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and members of the Class suffered economic injury, including payment of a price premium for Products that were falsely marketed as "hypoallergenic."

137. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

138. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION
### False Advertising
**Violation of California Business & Professions Code §§ 17500, *et seq.***
**(On behalf of the California Class)**

139. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

140. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

141.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

142.    The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

143.    Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiffs and the members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs requests that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

144.    As a result, and as they lack an adequate remedy at law, Plaintiffs and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched and pray for relief as set forth below.

145.    Pursuant to California Business & Professions Code §17535, Plaintiffs seek an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## SIXTH CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act
California Civil Code §§ 1750, *et seq*.
(On behalf of the California Class)**

146.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

147.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

148.    Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

149.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

150.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

      a.  §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

      b.  §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

      c.  § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

151.    Defendant knew, or should have known, that the labeling of its Products as hypoallergenic violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

152.    The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendant's labels which formed a material basis for their decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

153. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

154. Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

155. Plaintiffs served a CLRA demand pursuant to Civil Code §1782 in conjunction with this complaint, notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendant fails to address Plaintiffs' demand within 30 days, Plaintiffs will amend this complaint to seek the full measure of damages provided under Civil Code §1780.

### SEVENTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

156. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

157. Plaintiffs plead this cause of action in the alternative and pursuant to California law.

158. Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

159. Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

gotten gains to Plaintiffs and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

160. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiffs, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: May 8, 2026                    Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiffs*

29
<small>COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF</small>